## STATE ex APPLE v BOARD OF EDUCATION OF SHELBY COUNTY SCHOOL DISTRICT

Ohio Appeals, 2nd Dist, Shelby Co.

No. 113.   Decided Jan. 23, 1940.

Kerr, Kerr & Kerr, Troy;   Carl B. Felger, for plaintiff.

Knepper, White & Dempsey, Columbus;   H. K. Forsyth, Sidney, for defendants.

### OPINION

By BARNES, J.

The above-entitled cause is now being determined as an original action in mandamus upon the pleadings and an agreed statement of facts.   Plaintiff's petition was filed February 21, 1939, praying that a writ of mandamus issue to the defendant school board, commanding it to pass a proper resolution transferring certain described territory from the Houston rural school district to the Covington exempted village school district of Covington, Miami County, Ohio.

The petition, among other things, alleged that on January 21, 1939. acting under the provisions of §4696, GC, all of the electors of the described territory filed with the board of education of the Shelby County School District at Sidney, Ohio, their petition asking that said territory be detached from the Houston rural school district, and that it be transferred to the Covington exempted village school district of Cov-

ington, Miami County, Ohio; and further petitioning that said board do any and all acts necessary to properly complete such transfer.

The premises sought to be transferred are minutely described by metes and bounds and a plat of the territory is attached to the petition.

It is further alleged that the described premises are contiguous to the territory of the Covington exempted village school district of Covington, Miami County, Ohio, and that the entire south line of the described premises touches territory of the said Covington exempted village school district. It was further alleged that the petition, with a plat showing the exact territory sought to be attached with the names of the residents and electors of said territory plainly marked on said plat, was presented to the defendant board at their regular meeting on January 21, 1939.

It is further alleged that said petition was held until February 11, 1939, at which time the defendant board refused to grant the petition for the transfer of such territory on the ground that the transfer was not mandatory on said board under what is known as the "Foundation Law," and being §§7600-1 to 7600-8, GC, inclusive. It is further alleged in the petition that between January 21, 1939, the date of the filing of the petition with the defendant board, and February 11, 1939, when the board acted, two of the thirty-three signers of the petition requested in writing that their names be withdrawn. It is further alleged that even with the withdrawal of the said two names there remained in excess of seventy-five percent of the electors residing in the territory sought to be detached. The petition contains other allegations which we do not consider important to refer to at this time. The pertinent portion of §4696, GC, reads as follows:

"A county board of education may, upon a petition of the majority of the electors residing in the territory to be transferred, transfer a part or all of a school district of the county school district to an exempted village, city, or county school district, the territory of which is contiguous thereto. Upon petition of seventy-five per cent of the electors in the territory proposed to be transferred the county board of education shall make such transfer. A county board of education may accept a transfer of territory from any such school district and annex same to a contiguous school district of the county school district."

On March 25, 1939, defendants through their counsel filed a general demurrer to the petition making the specific claim that the facts set out in the petition did not constitute a cause of action against the defendants.

The memoranda accompanying the demurrer disclose that the major question sought to be raised was in effect that under the reorganization code, being §§7600-1 to 7600-8, GC, inclusive, as enacted May 23, 1935, so control §4696, GC, supra, as that the mandatory provisions of the latter sections, are not controlling where the board had followed the provisions of the reorganization code. Cited in support of the demurrer, were certain official opinions of the Attorney General of Ohio and also decisions of the Court of Appeals in other districts within the state.

It so happened that at the time of filing this demurrer there were pending before the Supreme Court of Ohio five cases involving the identical question.

By reason of this fact the general demurrer was not pressed for hearing. On May 10, 1939, the Supreme Court decided the case of the **State ex Adsmond, Appellee v Board of Education of Williams County School, 135 Oh St 383.** (Also see page 394 for other four cases). In substance, this case decides that where seventy-five per cent or more of the resident electors within certain territory located in the school district file a petition seeking transfer to a contiguous exempted village school district, if filed with the county board on or before the date fixed for the annual consideration and adoption of the

school organization plan for the coming year, and such petition otherwise satisfies legal requirements, it is a mandatory duty of such county board of education, by virtue of §4696, GC, to then approve the transfer of such territory. It is further held that the county board is not warranted in refusing such transfer because of any inhibition in §7600-7, GC. Two other questions were presented through the general demurrer, but we do not deem it necessary to mention these in view of the fact that on June 14, 1939, defendants sought and obtained leave to withdraw their demurrer and to file answer instanter.

Defendants' answer admitted the names and qualifications of the Board of Education of Shelby County School District; further that on or about January 21, 1939, a paper writing purporting to be a petition for the transfer of described territory was filed with the defendant board, and that on or about February 11, 1939, the defendant board refused to grant said petition. Thereafter the answer contained a general denial. On November 9, 1939, a stipulation was filed, agreeing to submit the cause on an agreed statement of facts and that the sections of the stipulations, numbered from 1 to 20, inclusive, are considered as having been offered in evidence, subject to the objections of the respective parties thereto, and with the request that the admissibility and relevancy to be passed upon by the court as such facts are considered.

Thereafter briefs were promptly filed, oral argument waived, and cause submitted. Under the admissions in the answer and the agreed statement of facts, plaintiff is entitled to a mandatory writ, unless other admitted facts require the disallowance of such writ.

Counsel for the defendants set out in their brief five separately stated grounds why writ should be denied. We will take up these five specifications in the same order as presented in defendants' brief.

## FIRST QUESTION

"1. Where territory is to be taken from a rural school district as to leave a portion of the district cut off from the remainder of the district so that the remaining parts are not contiguous, is such petition a legal petition upon which to base a transfer of territory?"

Supporting the above principle, counsel for defendants in their brief make the following citations:

Sec. 4685, GC;
Board of Education v Board of Education, 121 Oh St 213;
O. A. G., 1928, Vol. 3, page 2164, Opinion No. 2617;
O. A. G., 1928, Vol. 2, page 995, Opinion No. 2015;
Industrial Commission v Brown, 92 Oh St 309.

Also the unreported case of Steinner v Dohner, et, No. 28,395, Court of Common Pleas of Miami County, Ohio, decided by Rankin, J., October 25, 1937.

That the authorities cited sustain defendants' caption heading as a principle of law is unquestioned.

The question remains as to whether the facts under the agreed statement invoke the legal principle. The only reference to this question is presented in specifications 15 and 16 of the agreed statement of facts, which read as follows:

"15. In plaintiff's Exhibit No. 1, the map which is attached represents sections 19 and 30, T. 9-R, 5-E, and sections 23, 24, 25 and 26, in T. 10-R, 4-E, all in Loramie Township, Shelby County, Ohio.

The territory sought to be transferred is bounded on said map attached to Exhibit No. 1 by a red line. The Charles Renner farm, located in the east half of the southwest quarter of §26, is not included in said description. To the south and west of the said Renner farm is the Bradford school district in Miami County, and to the northeast of said Renner farm, is the territory sought to be transferred in this petition. Said Renner farm, together with the territory sought to be

transferred, is all a portion of the Houston Rural School District, in Shelby County, Ohio.

16. The Renner farm mentioned in specification No. 15, is the same farm covered by the description and map in Plaintiff's Exhibit 5, which was filed with the Board January 21, 1939."

Attached to the agreed statement of facts is found a map marked Exhibit 1, and attached Exhibit 5 is an application presented to the defendant board on January 21, 1939, signed by C. H. Renner and Mrs. C. H. Renner, being all the electors residing on the specifically described Renner farm praying for transfer to the Bradford School District, etc.

This petition is in the same general form as was the petition filed in the instant case. Attached to Exhibit 5 is a colored map showing location of the Renner farm as being contiguous to the Bradford School territory. Counsel for plaintiff make the claim that at the time of the filing of the petition, pertinent to the instant case, there were also filed two other petitions providing for transfer of territory in the same general location. Under specification 6; copy of the minutes of the board of education under date of January 21, 1939, discloses that "Three petitions were presented to the county board of education by Attorney Kerr of Troy, etc." Also specification No. 9, the minute book of the defendant boards, is again copied under date of February 11, 1939, and the first four lines read as follows: "Three petitions, representing certain described territory, with maps attached, were filed January 21, 1939, regarding the transfer of territory from the Houston Rural School District, etc." Further along in the minutes under paragraph 5, it appears that the board acted on the three petitions collectively and not separately. We might call attention to the fact that this question is not specifically raised in the answer, nor is it clearly presented through the agreed statement of facts. This is in the nature of a negative issue and would not in the first instance be essential for plaintiff to prove. Under the record as a whole we do not find that the Renner farm was left isolated. It is true that it would be isolated from the Houston School District, but contemporaneous with the petition in the instant case a like petition was filed taking care of the Renner farm through which it would be transferred to the Bradford School District of Miami County.

We hold against defendants under question No. 1.

### SECOND QUESTION

"2. Can names be withdrawn from a transfer petition up until the time the court is asked to issue a peremptory writ of mandamus, provided the County Board has passed upon the jurisdictional questions at or about the same time?"

On the factual question the evidence conclusively shows that on January 21, 1939, being the date when resident electors filed their application with the defendant board, every resident elector within the territory sought to be transferred signed the petition.

The total number of resident electors signing the petition was thirty-three.

Between January 21, 1939, and February 11, 1939 (the latter date being the date when the board rejected the application), two signers of the original application had in writing withdrawn their names.

On February 21, 1939, when the petition in mandamus in the present action was filed, no change had taken place as to the remaining signatories to the application for transfer.

On June 14, 1939, when the answer was filed by defendants, no change had taken place.

At a subsequent date, one of the resident electors of the territory moved out of the county.

Another person had arrived of age and at that time became a resident elector.

At a later date, probably September or October, five or six others of the

original signatories filed a purported written withdrawal.

On October 14, 1939, the defendant board passed a resolution and caused the same to be entered on their books and attempted to reconsider the application for transfer, and then and there again determined that the application for transfer would be rejected on several grounds, included in which was the finding that at that time that seventy-five per cent of the resident electors did not remain as signatories to the application for transfer.

From these facts it is sought to raise the question whether or not signatures may be withdrawn from the application, and, if so, when.

It is the claim of the plaintiff that signatures may not be withdrawn after the application is filed with the Board of Education; or in the alternative, if there is any right of withdrawal that such can only be exercised in the interim between the date of filing and the date of final action by the board; or, at most, not later than the date of filing the petition in mandamus.

Counsel for defendants make the claim that signatures may be withdrawn at any time before the final hearing by the court in the mandamus action.

Many citations of authorities have been presented pro and con, all of which we have carefully examined. Very few are directly in point and many of the others are not helpful by analogy; however, we think the law is well defined in Ohio.

In the case of **State ex Miars v Board of Education of Greene County, 18 Abs page 217**, in the ninth syllabus there appears the following:

"9. Petitioners for the transfer of territory to another school district have the right to withdraw their signatures from the petition up to the time that the school board acts thereon, but not thereafter, nor after mandamus has been brought to compel action by a board which fails to act. See **36 O. Jur., Schools, §86.**"

On page 220 of the opinion we made the following statement:

"The case of **State ex Kahle v Rupert, Auditor, 99 Oh St 17**, discusses very fully the rights of signatories to withdraw and the time when such right ceases.

We think the law is fairly inferable from the above-quoted case that the right of withdrawal exists up to the time that the Board acts. and that thereafter the right does not exist.

Applying this principle to the instant case, we would be inclined to hold that the withdrawal of signatures, even if unconditional, would not be effective if the Board had acted upon the petition."

In the case of **The State ex Kahle v Rupert, Auditor, 99 Oh St 17**, being the same case above referred to, the court in a per curiam in the first paragraph states the following:

"In the absence of statutory provisions to the contrary an elector signing a petition authorized by the statutes of this state, invoking either official or judicial action, has a right to withdraw his name from such petition, or, if he be the sole petitioner, to dismiss the same at any time before judgment has been pronounced, or before official action has been taken thereon. **Dutton v Village of Hanover, 42 Oh St 215; Hays et v Jones et, 27 Oh St 218; McGonnigle et v Arthur et, 27 Oh St 251, 256.**"

We fully appreciate that counsel for defendant is urging that the final action of the defendant board was October 14, 1939, and not February 11, 1939. This claim is made for the claimed reason that the board, according to the minutes of February 11, 1939, failed to make specific findings on jurisdictional questions and that thereby the proceeding was still pending until such action was taken on October 14, 1939.

It is pointed out that the minutes of February 11, 1939, fail to disclose that the board determined the number and authenticity of the signatories; the cor-

rectness or incorrectness of the description of the territory and the authenticity of the accompanying plat; the number of resident electors within the territory; whether or not the district to which transfer was requested was contiguous; whether or not seventy-five per cent of the resident electors had signed the application; and other so-called jurisdictional questions, claimed to be a condition precedent to any action of the board.

It is our determination that there is no legislative enactment requiring a board of education to note any so-called jurisdictional findings in their minutes. It is sufficient if the board names a finding either for or against the application. Such a finding would be a final determination.

If the board makes a specific finding, setting forth its reasons, such would not limit the inquiry under the mandamus action. However, there would be a limit as to time, and that would be on the date upon which the board acted and denied the application for transfer.

In other words, if it appears from the record that on February 11, 1939, the petitioners were not entitled to be transferred as a matter of law, then the writ would be denied.

We hold against the defendants under the second question.

### THIRD QUESTION

"3. When a court is asked to exercise the extraordinary power of mandamus, is it limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, or must it take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue?"

What we have heretofore stated in discussing question No. 2, is applicable to a discussion of question No. 3. Under this third question we are cited to two cases as follows: Board of Education v State ex Van Wye, 122 Oh St 247, and

State ex Haines v Board of Education, 131 Oh St 609.

We find nothing in the two cited cases, when read in the light of the facts under consideration, supporting defendants' claim under question No. 3.

### FOURTH QUESTION

"4. Do the mandatory provisions of §4696, GC, require territory to be transferred from a centralized school district?"

Under stipulation No. 19 of the agreed statement of facts, it appears that at a special election of the Houston Rural School District, held on June 29, 1939, the district was centralized by a vote of 362 for centralization and 4 against centralization.

Again, much that was said in answer to question No. 2 is applicable here. Under the law, as we find and determine it, the vote on centralization can not affect the instant case since the action of the board denying plaintiff's application for transfer was prior in point of time. We think it is clearly inferable from the decision of the Supreme Court in the case of Board of Education v State ex Van Wye, 122 Oh St 247, and Board of Education v State, 115 Oh St 333, that the proceeding first in point of time takes priority rights.

Plaintiff's rights must be determined as of February 11, 1939, and hence the subsequent action through which centralization was effected would not defeat the right.

### FIFTH QUESTION

"5. Can territory be transferred out of the district to which it has been transferred during a period of five years from the date of the original transfer without the approval of the State Director of Education to such a transfer?"

We fail to find any admissions in the pleadings or the agreed statement of facts that any part of the territory sought to be transferred had, within a period of five years prior to the filing

of the application in the instant case, been transferred. For this reason the question cannot be raised.

Claim may be made that the **obligation** rests upon the plaintiff to prove that no such transfer had been made within the period of five years, but we can not so conclude since the question is a negative one and for that reason no presumption would arise that such a transfer has been made.

We are constrained to the view that plaintiffs are entitled to the writ of mandamus; therefore, the writ may issue.

Costs will be adjudged against the defendants.

HORNBECK, PJ. & GEIGER, J., concur.